UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

Phyllis A. Engleson,

Plaintiff,

vs. ORDER

Little Falls Area Chamber of Commerce, a Minnesota non-profit corporation, and the City of Little Falls, a Minnesota municipal corporation,

Defendants. Civ. No. 01-1072 (DWF/RLE)

* * * * * * * * * * * * * * * * * * *

At Duluth, in the District of Minnesota, this 10th day of June, 2002.

## I. Introduction

On May 30, 2002, the Court heard argument on the Plaintiff's Motion to extend the expert disclosure deadlines, and to allow the disclosure of expert opinion evidence that would be otherwise untimely. At the time of the Hearing, the Plaintiff Phyllis A. Engleson ("Engleson") appeared by George L. May, Esq., the Defendant Little Falls Area Chamber of Commerce ("the Chamber") appeared by James C. Erickson, Esq., and the Defendant City of Little Falls ("the City") appeared by John E. Hennen, Esq. For reasons which follow, the Motion is denied.

JUN 10 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

(14)

## II. Factual and Procedural Background

This action arises out of an incident on September 12, 1998, in which Engleson fell on a traffic cone during an Arts and Craft Fair which was being held within the limits of the City, and was being sponsored by the Chamber. At the time that she fell, Engleson was walking across a street, which was being used by both pedestrians and automobiles. Traffic cones were placed to separate pedestrians from cars, and they restricted where the cars could travel. According to Engleson, the City and the Chamber regulated, and controlled automobile and pedestrian traffic, during the Fair, and approved the placement and deployment of the traffic cones. As a result, Engleson's Complaint alleges that the Defendants were negligent in the placement of the cones, and that negligence caused her injury.

Our Scheduling Order, which was issued on October 31, 2001, set the pretrial deadlines as follows: the Plaintiff's expert disclosures were due on March 1, 2002; the Defendants' expert disclosures were due on April 1, 2002; discovery concluded on May 1, 2002; all nondispositive Motions were to be filed, and heard, by June 1, 2002; all dispositive Motions should be filed, and heard, by August 1, 2002; and the case will be "Ready for Trial" on September 1, 2002. Notwithstanding these deadlines, Engleson contends that she was unable to retain an expert to testify "about traffic

cones, traffic safety and crowd control," by the set deadline for the disclosure of such opinion evidence of March 1, 2002. Since the Plaintiff disclosed no expert opinions, neither the City nor the Chamber disclosed any responsive expert opinion evidence on those issues. Engleson did retain Thomas Azonie ("Azonie"), who is listed as an expert in the area of crowd control, on April 2, 2002. For some reason, not otherwise explained in this Record, she waited until almost three months after her expert disclosure deadline expired to present this Motion to extend the deadlines. Both Defendants oppose the Motion as untimely and, if granted, as prejudicial.

III. Discussion

A. Standard of Review. The "good cause" standard of Rule 16(b), Federal Rules of Civil Procedure, provides the framework for our analysis of a Motion to amend the Scheduling Order. As we have often observed:

> Rule 16(b), Federal Rules of Civil Procedure, provides that a Scheduling Order "shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge." The "good cause" standard is an exacting one, for it demands a demonstration that the existing schedule "cannot reasonably be met despite the diligence of the party seeking the extension." Rule 16(b), Federal Rules of Civil Procedure, Advisory Committee Notes -- 1983 Amendment; see also, Julian v. Equifax Check Services, Inc., 178 F.R.D. 10,

> 16 (D. Conn. 1998). It hardly bears mention, therefore, that "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992). Nor does the question of good cause turn on the existence or absence of prejudice to the non-moving party. Luigino's Inc. v. Pezrow Cos., 178 F.R.D. 523, 525 (D. Minn. 1998).

Scheidecker v. Arvig Enterprises, Inc., 193 F.R.D. 630, 631-32 (D. Minn. 2000), quoting Archer Daniels Midland v. Aon Risk Services, Inc., 187 F.R.D. 578, 581 (D. Minn. 1999).[1]

Indeed "[w]e doubt that it can be seriously questioned that '[a]dherence to reasonable deadlines is * * * critical to maintaining integrity in court proceedings.'" Alholm v. American Steamship Co., 167 F.R.D. 75, 79 (D. Minn. 1996), quoting Rouse v. Farmers State Bank of Jewell, 866 F. Supp. 1191, 1199 (N.D. Iowa 1994).

B. Legal Analysis. Here, Engleson failed to serve her expert disclosure, concerning traffic control, by the deadline of March 1, 2002, and Rule 16 "permits the district court * * * to impose sanctions on a party for failing to meet a deadline." Firefighters' Institute For Racial Equality v. City of St. Louis, 220 F.3d 898, 902 (8th Cir. 2000). In such an instance, Rule 16 is buttressed by the sanctions imposed by Rule 37(c)(1), Federal Rules of

---

[1]Local Rule 16.3 serves to further reinforce the need for a party to show good cause when seeking to extend a pretrial deadline. The Advisory Committee Notes to Local Rule 16.3 explain that the Rule is "intended to discourage modifying pretrial schedules unless good cause has been shown." Local Rule 16.3, Advisory Committee Notes.

Civil Procedure, which requires exclusion of an expert's opinion if disclosures are not timely made.[2] As we have previously noted, though:

> "While sanctions under Rule 37(c)(1) are mandatory * * * exclusion of evidence should not apply if the offending party's failure was 'substantially justified,' or if the failure was 'harmless.'" Transclean Corp. v. Bridgewood Services, Inc., [77 F. Supp.2d 1045,] 1064 [(D. Minn. 1999)]. These exceptions to Rule 37(c)(1)'s imperative serve "to avoid unduly harsh penalties" that may result from an inflexible application of the Rule. Id., citing Rule 37(c), Federal Rules of Civil Procedure, Advisory Committee Notes -- 1993 Amendments. In determining whether the automatic exclusion provisions of Rule 37(c)(1) should apply, the Court should consider the following four factors in assessing the substantiality of any proffered justification for the failure to disclose, as well as the harmlessness of that failure: 1) the importance of the excluded material; 2) the explanation of the party for its failure to comply with the required disclosure; 3) the potential prejudice that would arise from allowing the material to be used at Trial, or on a Motion; and, 4) the availability of a continuance to cure such prejudice. See, Transclean Corp. v. Bridgewood Services, Inc., supra at 1064, citing

---

[2]Rule 37(c)(1) provides, in pertinent part, as follows:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

> Citizens Bank v. Ford Motor Co., 16 F.3d 965, 966 (8th Cir. 1994); Millen v. Mayo Foundation, 170 F.R.D. 462, 465 (D. Minn. 1996); see also, Trilogy Communications, Inc. v. Times Fiber Communications, Inc., 109 F.3d 739, 744 (Fed. Cir. 1997).

Transclean Corp. v. Bridgewood Servs., Inc., 101 F. Supp.2d 788, 795-96 (D. Minn. 2000).

While, under the governing law, we could exclude the opinion of Azonie as untimely -- which is the remedy the Defendants ask us to impose -- we will not do so if "the failure to meet a deadline was either harmless or substantially justified." Firefighters' Institute For Racial Equality v. City of St. Louis, supra at 902. We find that neither cause for relief applies here.

As a threshold matter, we conclude that Engleson's failure to comply with the established expert disclosure deadline was not substantially justified, as we are provided with no cause, let alone good cause, for the late disclosure of that opinion evidence. More to the point, however, we find that Azonie's expert opinions would not be helpful to the Jury's resolution of the liability issues. While Engleson contends that Azonie's opinion is essential if she is to prove that the Defendants' placement of the size, and type of traffic cones, which were employed at the Arts and Craft Fair, was negligent,[3] it is clear from the Hearing that Azonie's proffered

[3]Notably, we have not been provided with Azonie's expert report, or even a reliable summary of his anticipated opinion testi-
(continued...)

testimony will, in all probability, be inadmissible under Rule 702, Federal Rules of Evidence.

By and large, Rule 702 governs the admissibility of expert testimony, and provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702, Federal Rules of Evidence (2001).[4]

As the Supreme Court has explained, "Rules 702 and 703 grant expert witnesses testimonial latitude unavailable to other witnesses on

---

[3](...continued) mony. Nonetheless, Plaintiff's counsel has apprised us of the general gist of Azonie's testimony, at least as counsel presently understands the import of that testimony.

[4]Rule 703, Federal Rules of Evidence, also imposes the following restrictions on the provision of expert opinion evidence:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.

Rule 703, Federal Rules of Evidence (2001).

the 'assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline.'" Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 148 (1999), quoting Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592 (1993). When evaluating the admissibility of expert testimony, a Court must look to both the relevance, and the reliability, of the proffered testimony. See, Lauzon v. Senco Products, Inc., 270 F.3d 681, 686 (8th Cir. 2001), citing Daubert v. Merrell Dow Pharm., Inc., supra at 591-93; Bonner v. ISP Technologies, Inc., 259 F.3d 924, 929 (8th Cir. 2001); Jauregui v. Carter Mfg. Co., 173 F.3d 1076, 1082 (8th Cir. 1999).

"When it comes to admission of expert testimony under the Federal Rules of Evidence, a trial judge has a gatekeeping responsibility to 'ensur[e] that an expert's testimony rests on a reliable foundation and is relevant to the task at hand.'" Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 714-15 (8th Cir. 2001), quoting Kumho Tire Co., Ltd. v. Carmichael, supra at 141. Consequently, "before accepting the testimony and opinion of an expert witness, the Trial Court is charged with the 'gatekeeper' function of determining whether the opinion is based upon sound, reliable theory, or whether it constitutes rank speculation." Kemp v. Tyson Seafood Group, Inc., 2000 WL 1062105 at *2 (D. Minn. July 19, 2000), citing Kumho Tire Co. v. Carmichael,

supra at 141, and Daubert v. Merrell Dow Pharm., Inc., supra at 589-90. "Expert testimony that is speculative is not competent proof and contributes 'nothing to a "legally sufficient evidentiary basis."'" Concord Boat Corp. v. Brunswick Corp., 207 F.3d 1039, 1057 (8th Cir. 2000), quoting Weisgram v. Marley Co., 528 U.S. 440, 454 (2000).

Moreover, as the Court in Kuhmo made clear, the Trial Court's gatekeeping function is to be employed for all expert testimony. Kumho Tire Co. v. Carmichael, supra at 141 ("We conclude that Daubert's general holding -- setting forth the trial judge's general 'gate-keeping' obligation -- applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge."); see also, Rule 702, Federal Rules of Evidence, Advisory Committee Notes to 2000 Amendments ("Consistently with Kumho, the Rule as amended provides that all types of expert testimony present questions of admissibility for the trial court in deciding whether the evidence is reliable and helpful."). Finally, "[b]oth the Eighth Circuit Court of Appeals and the Supreme Court have made clear that a person, although qualified as an expert in one area of expertise, may be precluded from offering opinions beyond that expertise, or that are not founded on a reliable methodology." Smith v. Rasmussen, 57 F.

Supp.2d 736, 766 (N.D. Iowa 1999), citing Kumho Tire Co., Ltd. v. Carmichael, supra at 141.

In the final analysis, "[i]n order to be helpful to the trier of fact, the witness must be qualified as an expert, the expert must have a reasonable factual basis for [his] testimony, the testimony must be based on reliable methods, and the testimony must be relevant to the facts at issue." Kemp v. Tyson Seafood Group, Inc., supra at *2. As the Supreme Court, in General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997), succinctly observed:

> Trained experts commonly extrapolate from existing data. But nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply to great an analytical gap between the data and the opinion proffered.

With these precepts in mind, we turn to the proffered opinion evidence which is expected from Azonie, in order to determine its relative importance to the Plaintiff's claim.

Apparently, Azonie either works for, or owns, a security services company that provides crowd control at large public gatherings, such as concerts. See, Ex. B to Affidavit of George L. May. According to Engleson, Azonie will testify that a reasonable person would not have employed twenty-eight inch high traffic cones, which are commonly used for road construction, to control pedestrian

traffic at an Arts and Craft Fair. Rather, in Azonie's opinion, four-foot high plastic fencing is more appropriate for pedestrian traffic at an outdoor gathering.

First, we note that it is not at all clear that Azonie's testimony concerning the use of fencing, as opposed to traffic cones, would be helpful to the Jury. The orange traffic cone which Engleson stumbled over is a common object, known to the Jury, which is deployed in directing traffic, road or foot, through construction areas. See, United States v. Ellsworth, 738 F.2d 333, 336 (8th Cir. 1984)(finding that the purported expert testimony would not assist the Jury because there was "no basis upon which to conclude that the subject was beyond the common understanding of the jurors or that Dr. Chesen could offer information that would ordinarily not be available to them."), and cases cited therein; Transclean Corp. v. Bridgewood Servs., Inc., 101 F. Supp.2d at 804 (excluding expert testimony where it "offers no more than [the expert's] own subjective belief as to how the common person would view these advertisements, and such a belief provides no assistance to Jurors who, with as much skill and background, can appraise the extent to which the advertising is misleading, if at all."). While Azonie may have a personal preference for one form of traffic control over another, we do not understand that his preference is predicated on any rule, regulation, or authorized manual -- it is merely his

predilection. Accordingly, even if the opinion evidence were timely disclosed, it would be unhelpful to the Jury, and should be excluded on that independent ground.

Moreover, on the Record presented, we conclude that Azonie's opinions are inadmissible, under Rule 702, because Engleson has presented no showing that the opinion is "the product of reliable principles and methods * * *[.]" Rule 702, Federal Rules of Evidence. Rather, it appears that Engleson would simply like to introduce Azonie to explain how he would have personally handled crowd control at the Arts and Craft Fair, and to counteract any testimony from the Defendants that they routinely employ traffic cones for crowd control. As we have noted, the Plaintiff has failed to identify any traffic code, regulation, or industry standard upon which Azonie would rely in providing the Jury with his "standard of care" for traffic control, nor are we afforded any background as to Azonie's experience and training in crowd control measures, other than an allusion to his provision of such services in the past. In the vernacular, Azonie's opinion, on the subject of traffic control, is undergirded by no more than ipse dixit -- it must be so, merely because Azonie has said it is so.

Lastly, Engleson has also offered no reason, apart from her own dereliction, for the delay in disclosing Azonie as her crowd control expert. While she contends that she was unable to secure

expert testimony, on this issue, prior to March 1, 2002, we are not so persuaded. According to Engleson, in discovery responses, which were received from the City on December 20, 2001, and supplemented on January 14, 2002, she first learned about, and apparently understood the mechanics behind, the Defendants' placement of the safety cones to control pedestrian traffic in certain areas of the Arts and Craft Fair. She contends that these disclosures prompted the need for expert testimony as to Defendants' absence of due care in placing cones at the site of the accident, rather than a fence. Of course, Engleson knew what she tripped, or fell over, at the time of the accident and, if there was anything inappropriate in the placement of that object, she was on notice of the need for expert opinion evidence on that topic from the outset. We understand that Engleson encountered problems in securing Azonie's opinions, but those problems did not prompt her to contact the Court for relief from the applicable disclosure deadlines.

We are presented with no colorable showing that further delay in the preparation of this case for Trial would be justified. If Engleson were now allowed to disclose an expert, she requests additional time in which to prepare that opinion testimony, and we would be obligated to allow the Defendants to name a responsive expert, whose opinions would also require preparation time. Thereafter, the parties might well need to depose the respective ex-

perts, and lengthy delays would be occasioned -- all for expertise that, under the circumstances of this case -- is unnecessary. The expected delay is neither justified, nor harmless. "In sum, because [Engleson] arrogated to [herself] the right to override the deadlines of our Pretrial Schedule, and did so to the [Defendants] prejudice, and since [she] is now unable to justify [her] decision to do so, [her] violation of the Scheduling Order has not been substantially justified." Transclean Corp. v. Bridgewood Servs., Inc., 77 F. Supp.2d 1045, 1065 (D. Minn. 1999), vacated in part on other grounds, --- F.3d ---, 2002 WL 1012878 (Fed. Cir. May 21, 2002).

Were Azonie's opinions of critical importance to the Jury's consideration of the liability issues, we would be presented with different considerations. Here, however, the superiority of one form of traffic control device or another is well within the knowledge and common understanding of the Jurors.[5] We do not deal, here, with esoteric concepts of metaphysics, we deal with traffic

[5]We are mindful of Engleson's concern that the Defendants' employees will express their preference for one traffic control device over another and that, as a consequence, she should be able to respond in kind. The simple answer is that she may object, at Trial, to the provision of expert opinion testimony which is not helpful to the Jury and if, as she contends, the Defendants' past employment of traffic cones has caused prior injuries, we are confident that, if otherwise competent, such evidence will be drawn to the Jury's attention.

control. "Although a continuance * * * might alleviate some of the prejudice inflicted by unfair surprise, such a remedy would wreak its own distinctive prejudice, by unnecessarily prolonging the pre-trial processing of the Plaintiffs' claims, with the attendant ex-pense of * * * prolonged Motion practice." Transclean Corp. v. Bridgewood Servs., Inc., 77 F. Supp.2d at 1064. As such, we conclude that the Plaintiff's delay in disclosing Azonie's expert opinions in this case was not substantially justified, nor was it harmless, and we find that the opinion evidence must be excluded in accordance with Rules 16(f), and 37(c)(1). Accordingly, we deny the Plaintiff's Motion to extend the expert disclosure deadlines.

NOW, THEREFORE, It is --

ORDERED:

That the Plaintiff's Motion to Extend Dates to Disclose Experts [Docket No. 9] is DENIED.

BY THE COURT:

Raymond L. Erickson
UNITED STATES MAGISTRATE JUDGE

MINNESOTA CHAPTER OF THE FEDERAL BAR ASSOCIATION

In connection with
The Federal Judiciary

***28th Annual Federal Court Practice Seminar***

June 19, 2002
8:00 am—5:15 pm

Minneapolis Convention Center
1301 Second Avenue South
Room 208
Minneapolis, MN 55402
(612) 335-6000

**The Minnesota Chapter of the Federal Bar Association**

c/o Kelly & Berens, P.A.
80 S. 8th Street, Suite 3720
Minneapolis, MN 55402

NON-PROFIT
ORGANIZATION
U.S. POSTAGE
**PAID**
Minneapolis, MN
Permit No. 2657

**Application Pending for 7.5 CLE Credits including 2 Ethics and 1 Bias Credit**

*Featured Speakers Include:*

**District of Minnesota**

**Judge David S. Doty**

**Judge Donovan W. Frank**

**Judge Paul A. Magnuson**

**Judge Ann D. Montgomery**

**Judge John R. Tunheim**

**Chief Magistrate Judge Jonathan Lebedoff**

**Magistrate Judge Arthur J. Boylan**

**United States Bankruptcy Court**
**District of Minnesota**

**Judge Robert J. Kressel**

## Morning Session:

| | |
|---|---|
| **7:30-8:00** | **Registration** |
| **8:00-8:15** | **Opening Remarks and Welcome,** ***Judge Ann D. Montgomery*** |
| **8:15-9:00** | **Securities Law Issues in the Wake of Enron,** ***Timothy J. Warren (SEC Midwest Regional Office), Professor Niels Schaumann (William Mitchell College of Law), Karl L. Cambronne (Chestnut & Cambronne)*** |
| **9:00-9:45** | **Current Issues in Employment Law,** ***Judge Paul A. Magnuson, Linda L. Holstein (Parsinen Kaplan Rosberg & Gottlieb PA), John R. McDonald (Meagher & Geer, PLLP), Daniel Oberdorfer (Leonard, Street and Deinard)*** |
| **9:45-10:00** | **Morning Break** |
| **10:00-10:45** | **Current Initiatives in the U.S. Attorneys' Office,** ***Tom Heffelfinger (U.S. Attorneys Office)*** |
| **10:45-11:45** | **Discovery Disputes: Professionalism in the Practice of Law?,** ***Judge David S. Doty, Chief Magistrate Judge Jonathan Lebedoff, Magistrate Judge Arthur J. Boylan,*** |
| **11:45-12:45** | **Lunch (Room 211)** |

11:45-12:45 Lunch (Room 211)

## Afternoon Session:

| | |
|---|---|
| **12:45-1:30** | **The Clerk's Office Can Be Your New Best Friend,** ***Celeste Shahidi, Lou Jean Gleason, Mary Lenner, Gertie Simon, Andy Seldon*** |
| **1:30-2:15** | **How to Effectively Teach and Persuade in Patent or Intellectual Property Cases: Why, When and How,** ***Judge Donovan W. Frank, Becky R. Thorson (Robins, Kaplan, Miller & Ciresi), Stephen J. Davidson (Leonard, Street and Deinard)*** |
| **2:15-3:15** | **Issues in the Wake of 9/11: Racial Profiling --** ***Daniel M. Scott (U.S. Federal Public Defenders' Office)*****; Response by the Department of Justice --** ***Tony Brown (U.S. Attorneys Office)*** |
| **3:15:3:30** | **Afternoon Break** |
| **3:30-4:15** | **Update on Technology Tools for Litigating in Federal Court,** ***Judge John R. Tunheim, Judge Robert J. Kressel, Eric J. Magnuson (Rider, Bennett, Egan & Arundel)*** |
| **4:15-5:15** | **Ethics in "Real Life" Practice Situations,** ***Martin A. Cole (Lawyers Professional Responsibility Office)*** |

## *Seminar Registration*

☐ Member $195.00

☐ Non-Member $225.00

Name ____________________

Firm/Employer ____________________

Address ____________________

____________________

Phone ____________________

E-Mail ____________________

**Complete registration form and send with check payable to:**

**Minnesota Chapter, FBA**
**c/o Nancy Gustafson**
**Kelly & Berens, P.A.**
**Suite 3720 IDS Center**
**80 South Eighth Street**
**Minneapolis, Minnesota 55402**

**Not a Member? Join the FBA**

*To apply on-line or to download application form go to http://www.fedbar.org and click on "Join the FBA."*

Questions call: Barbara P. Berens, Vice President, Planning, Minnesota Chapter FBA
(612)-349-6171

**Annual Seminar Planning Committee:**

Kristine M. Boylan, Meagher & Geer, P.L.L.P.

Catherine A. McEnroe, Leonard, Street and Deinard

Celeste M. Shahidi, U.S. Courthouse Minneapolis Building

Susan Nolting, U.S. Department of Justice

Maureen Watz Gornik, Warren E. Burger Federal Building