SCANNED
APR 2 1 2004
U.S. DISTRICT COURT ST. PAUL

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 03-1061

Phyllis A. Engleson, *
*
Plaintiff/Appellant, *
*
v. *
*
Little Falls Area Chamber of Commerce, a Minnesota non-profit corporation; City of Little Falls, a Minnesota municipal corporation, *

CV01-1702 DWF/RLE

Defendants/Appellees. *

Appeal from the United States District Court for the District of Minnesota.

City of Little Falls, *
*
Cross Claimant/Appellee, *
*
v. *
*
Little Falls Area Chamber of Commerce, *
*
Cross Defendant/Appellee. *

Submitted: October 24, 2003

Filed: March 29, 2004

Before BYE, HANSEN, and MELLOY, Circuit Judges.

FILED 4-21-04
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK VEM

---

BYE, Circuit Judge.

Phyllis A. Engleson, a North Dakota resident, brought a diversity action against the City of Little Falls, Minnesota, and the Little Falls Area Chamber of Commerce (collectively the City), alleging the City's negligent placement of traffic cones at the Little Falls Area Arts & Crafts Fair had caused her to trip on a cone and sustain personal injuries. The district court[1] entered summary judgment for the City, concluding it was not under a duty to warn fair goers of the presence of safety markers and in any event enjoyed discretionary immunity under Minnesota law.

Because of diversity between the parties and Ms. Engleson alleging damages in excess of $75,000, the district court did have subject-matter jurisdiction under 28 U.S.C. § 1332(a), and we have jurisdiction under 28 U.S.C. § 1291. Without reaching the discretionary-immunity defense, we now affirm.

I

Phyllis A. Engleson was one of approximately 100,000 visitors to the Little Falls Area Arts & Crafts Fair in 1998 and was the only one known to have sustained personal injuries by tripping on a traffic cone.

The Fair has been the largest public event in the Little Falls area for over twenty-five years. In 1998, over 1,000 vendors and exhibitors set up their booths on the sidewalks of the several city blocks of the Fair district. To accommodate visitors, the City converted the parallel parking areas along the curb on either side of each street into pedestrian walkways, set off from the vehicular-traffic lanes by cones

---

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

placed at intervals on the solid-white fog lines ten feet from the curbs. The City had so used these traffic cones for several years for crowd control and to separate vehicular traffic from pedestrians in attendance.

Though Ms. Engleson had attended the Fair on two occasions prior to 1998 and spent three hours at the 1998 Fair before the mishap occurred, she tripped on the cone as she was walking with a friend along one of the fog lines. She had noticed cars shared the streets with pedestrians, but she did not see any of the traffic cones before her fall. They were twenty-eight inches tall, had two reflector collars, and were placed at sixty-foot intervals so as six or seven lined each side of the street in a given block.

In the weeks preceding the Fair, Chamber of Commerce officials met on several occasions with Little Falls officials, including the Chief of Police, Manager of City Services, and Street Supervisor. At a meeting held on August 19, 1998, these officials approved a map of the restricted parking areas in the Fair district. Though Little Falls owned plastic fencing, the officials decided to use cones and signs to restrict parking, because the fencing would require costly drilling and restrict access to vendors by forcing visitors to circumvent the fencing and cross the streets at intersections. Except for minor modifications, the plan which emerged resembled the plan the City had used for as long as fourteen years.

Through its insurance agent, the City received claims from two other visitors who had previously tripped on a cone. In 1995, a visitor fell and damaged her glasses. In 1998, on the day of Ms. Engleson's accident, another visitor tripped, but her insurance claim indicated her injuries were unknown.

II

Because of this being a diversity action, we apply the substantive law of the forum state, Minnesota. Gylten v. Swalboski, 246 F.3d 1139, 1141 (8th Cir. 2001).

We review motions for summary judgment *de novo*, applying the same standard as the district court: whether the record, viewed in a light most favorable to the nonmoving party, shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id.; Fed. R. Civ. P. 56(c). We regard summary judgment not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules, which are designed to secure a just, speedy, and inexpensive determination of a given cause of action. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

Because the parties agree on all the material facts as we have recited them above, we need determine only whether the district court properly concluded the City was entitled to judgment as a matter of law. In Minnesota, a property owner has a reasonable duty to protect persons from being injured by foreseeable dangerous conditions on the property, unless the risk of harm is obvious. Rinn v. Minn. State Agric. Soc'y, 611 N.W.2d 361, 364 (Minn. 2002). The district court reasoned the City was relieved of a duty to warn Fair attendees of the cones because they serve as safety markers and so were obvious as a matter of law.

Ms. Engleson argues the court erroneously focused on the size and color of the cones instead of their use and placement at the Fair. She argues the City was negligent in placing the cones at sixty-foot intervals amid the throngs of visitors, where they would be obscured from view. She concedes in most circumstances or in the abstract the traffic cones would be obvious as a matter of law but were obscured by the crowd at the time of her mishap.

Minnesota courts have adopted the relevant provision of the Restatement (Second) of Torts. See Louis v. Louis, 636 N.W.2d 314, 319-21 (Minn. 2001). According to the Restatement, a condition is not obvious unless both the condition and the risk are apparent to and would be recognized by a reasonable person in the position of the visitor, exercising ordinary perception, intelligence, and judgment. Restatement (Second) of Torts § 343A, cmt. b (1965). In other words, the test for what constitutes an obvious danger is an objective test; the question is not whether the injured party actually saw the danger, but whether the danger was in fact visible. Louis, 636 N.W.2d at 321.

Here, the cones would have been visible to a reasonable person exercising ordinary perception and judgment. The twenty-eight-inch cones were bright orange containing reflective collars. As the district court stated, the cone itself was a warning marker and visible.

Moreover, the placement of the cones did not make them so much less obvious that the City had a duty to warn Ms. Engleson. Six or seven cones were placed on either side of each block, and Ms. Engleson concedes the cones were effective in separating pedestrian from vehicular traffic. In other words, the fog lines and cones cleared a corridor between people and cars, and because she was halfway down the block at the time of her accident, Ms. Engleson could have seen at least two and more likely three cones by looking down the corridor in either direction on either side of the street to the end of the block. To a reasonable person who had decided to walk at the edge of traffic in a crowded fair, the cones would have been obvious, or so we conclude the Minnesota courts would hold. An invitee is under a duty to exercise reasonable care for his or her own safety and to observe that which is obvious to the ordinarily prudent person. Tonne v. Becker Grain & Lbr. Co., 139 N.W.2d 797, 799 (Minn. 1966).

Ms. Engleson also argues the City had a duty to warn her even of an obvious danger because the City had reason to anticipate she would be distracted. The Minnesota Supreme Court "has consistently held that distracting circumstances are factors for a jury to consider and may excuse a plaintiff's failure to see that which is in plain sight." Van Gordon v. Herzog, 410 N.W.2d 405, 406 (Minn. Ct. App. 1987). As the Restatement explains:

> There are, however, cases in which the possessor of the land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger . . . . Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted . . . .

Restatement (Second) of Torts § 343A, cmt. f (1965).

As an exception to the general rule, this provision triggers a duty to warn of an obvious danger only where the land possessor should anticipate even a reasonable visitor will miss the danger. Stated from the visitor's viewpoint, the distraction will excuse the visitor's failure to see what is in plain sight only if a reasonable person would have missed the obvious danger for the distraction. In Van Gordon, for example, the court held a jury question existed as to whether the activity in a crowded bar distracted the plaintiff from the otherwise obvious danger of the ankle-high sill of an open window. 410 N.W.2d at 407.

Nothing in the circumstances of the Fair should have caused the City to anticipate the cones would pose a hazard to visitors. The cones were not inherently dangerous to pedestrians; indeed, the cones were there to keep people and vehicles apart. Other than the normal activities of the Fair which 100,000 visitors negotiated as they navigated the Fair district, there were no distractions the City could have

anticipated would cause a reasonably prudent pedestrian to trip on a visible safety cone.[2] Ms. Engleson identifies no such distraction.

We are mindful of her sentiment expressed by which the City should bear some responsibility for her alleged injuries; after all, she would not have sustained them had the City not invited the public to the Fair and made use of the cones. Taken to its ultimate conclusion, however, Ms. Engleson's position invites us to impose on land possessors a legal duty to provide visitors warning upon warning, *ad infinitum*. Needless to say, such a position would impose undue costs on possessors of land, while permitting visitors to abdicate reasonable care for their own persons. We think Minnesota, like all other tort regimes known to us, has struck a better balance: The land possessor's legal duty starts where the invitee's responsibility to care for self ends. "[N]o one needs notice of what he knows or reasonably may be expected to know." Baber v. Dill, 531 N.W.2d 493, 496 (Minn. 1995) (quotation omitted).

III

A prima facie case for negligence in Minnesota requires establishment of the textbook elements of duty, breach, causation, and damage. See Gilbertson v. Leininger, 599 N.W.2d 127, 130 (Minn. 1999). Because Ms. Engleson has failed to establish the City was under a duty to warn her of the safety cone, she has not made out a prima facie case for negligence, and we affirm the district court's judgment without reaching the City's discretionary-immunity defense. See Gylten, 246 F.3d at 1142, 1145.

---

[2]Contrary to Ms. Engleson's assertions, the record is devoid of evidence the City had actual notice other visitors sustained personal injuries tripping on cones. The person who tripped in 1995 only broke her glasses. A second person, whose injuries were unknown, tripped on a cone the very day of her mishap.

Accordingly, we affirm the district court's entry of summary judgment for defendants.

______________________________

A TRUE COPY OF THE ORIGINAL
MICHAEL E. GANS, CLERK
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
BY: Michael E. Gans